215 F.3d 241 (2nd Cir. 2000)
 JOSEPH J. FARRICIELLI, Plaintiff-Appellee, QUINNIPIAC GROUP, INC., Defendant-Appellee,
v.
SIDNEY J. HOLBROOK, COMMISSIONER OF THE CONNECTICUT DEPARTMENT OF ENVIRONMENTAL PROTECTION, Defendant,
ARTHUR J. ROCQUE, JR., Defendant-Appellant.
 No. 98-9139
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 March 20, 2000, Argued
June 12, 2000, Decided
 
 MARK P. KINDALL, Assistant Attorney General, Hartford, CT (Richard Blumenthal, Attorney General of Connecticut, Krista E. Trousdale, on the brief), for Defendant-Appellant Arthur J. Rocque, Jr.
 MAUREEN O'DOHERTY, Hamden, CT, for Plaintiff-Appellee Joseph J. Farricielli.
 Before: FEINBERG, JACOBS, and HALL,* Circuit Judges.
 PER CURIAM:
 
 
 1
 Arthur J. Rocque, Jr., the Commissioner of the Connecticut Department of Environmental Protection, appeals from a decision of the United States District Court for the District of Connecticut, Warren W. Eginton, Senior District Judge, dated July 1, 1998. Judge Eginton's order granted reconsideration of, but adhered to, an order dated June 12, 1997, by Robert N. Chatigny, District Judge, which denied Eleventh Amendment immunity to the Commissioner. For the reasons stated below, we vacate and remand this case to the district court.
 
 I. Background
 
 2
 Farricielli, through a company of which he is president, has a financial interest in a parcel of land in Hamden, Connecticut (the site). In December 1992, the site was leased to Quinnipiac Group (Q Group). In September 1994, Q Group began using the property to operate a bulky waste disposal facility. The contract between Farricielli and Q Group required Q Group to obtain and comply with all permits necessary to operate the facility. In July 1996, Farricielli brought this suit against Q Group, arguing that it was operating the facility in violation of several environmental laws. The complaint alleges, inter alia, that Q Group unlawfully discharged contaminated water from ponds on the site, failed to submit the required reports to the Connecticut Department of Environmental Protection, operated an open dump at the site, contributed to imminent and substantial pollution at the site, and violated state hazardous and solid waste laws.
 
 
 3
 In two counts of the ten-count complaint, Farricielli also named as a defendant Sidney J. Holbrook, at that time the Commissioner of the Connecticut Department of Environmental Protection (Commissioner).[1] The complaint alleged that the Commissioner had "taken no effective action" regarding Q Group's violations of environmental law, and further that the Commissioner had "no intention of taking enforcement action in response to these violations." Farricielli claimed that the Commissioner's failure to act violated the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6972(a)(1)(B) (1994), and the Connecticut Environmental Protection Act (CEPA), Conn. Gen. Stat. 22a-14 et seq. (2000). Farricielli also alleged that the Commissioner directed the dumping of improper waste at the site. The complaint sought (1) a permanent injunction restraining the Commissioner from contributing to endangerment at the site, through act or omission; and (2) an order requiring the Commissioner to clean up the site.
 
 
 4
 In August 1996, the Commissioner moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), contending that the Eleventh Amendment barred Farricielli's claims under RCRA and CEPA. While this motion was pending, there were a number of significant developments in the case. First, the Commissioner and Q Group agreed in October 1996 to a Consent Order requiring Q Group to remove certain waste from the site. The Consent Order noted that the Commissioner had twice -- in August 1995 and April 1996 -- issued Notices of Violation finding that Q Group was not in compliance with state environmental law. Second, Q Group vacated the site, on or about November 1, 1996, and has not operated any facility on the site since that time. Third, the Commissioner commenced an environmental enforcement action against Q Group in state court on November 4, 1996, contending that it had failed to comply with the Consent Order, and seeking substantial monetary penalties.[2]
 
 
 5
 Farricielli then filed a first amended complaint in the district court on November 25, 1996, asserting additional factual allegations based on the Consent Order. Farricielli repeated his allegations against the Commissioner, but now alleged that the Commissioner had "no intention of taking meaningful enforcement action in response to these violations." (Emphasis added.) In December 1996, the Commissioner moved to dismiss the amended complaint, again contending that the Eleventh Amendment barred Farricielli's claim.
 
 
 6
 In March 1997, Judge Chatigny denied as moot the Commissioner's initial motion to dismiss the complaint. In June 1997, Judge Chatigny denied the Commissioner's second motion to dismiss Farricielli's RCRA claim (Count IX), but granted the Commissioner's motion to dismiss the state CEPA claim. Judge Chatigny's brief memorandum endorsement denying the Commissioner's motion to dismiss Farricielli's RCRA claim stated, in full:
 
 
 7
 Count IX may stand, however, because the Eleventh Amendment does not bar a suit alleging violations of federal law if only prospective injunctive relief is sought. See Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Although a state official has broad discretion in determining how to implement state law, that discretion does not extend to permitting violations of applicable federal law. So ordered.
 
 
 8
 Roughly two weeks later, the Commissioner moved for reconsideration, arguing that the district court had overlooked the Supreme Court's decision in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996).
 
 
 9
 Although the motion for reconsideration addressed a decision issued by Judge Chatigny, the case was transferred to District Judge Christopher F. Droney in October 1997. The case was then transferred again, to Senior District Judge Eginton, in May 1998. In July 1998, Judge Eginton denied reconsideration, stating that, "Although Seminole Tribe was not cited in his endorsement order, it is clear that Judge Chatigny considered that decision in his ruling . . . ." Judge Eginton further distinguished Seminole Tribe by reasoning that the federal statute at issue in that case created an "'intricate remedial scheme,'" Seminole, 517 U.S. at 74, whereas the enforcement provisions of RCRA were not an "'intricate remedial scheme.'" Judge Eginton also granted a pending motion by Farricielli to file a second amended complaint, which asserted additional claims against three new defendants, waste haulers who allegedly contributed to the pollution at the site.
 
 
 10
 The Commissioner filed a timely appeal from Judge Eginton's decision.[3] Although this case is still pending in the district court, we have jurisdiction to hear this appeal because an order denying immunity under the Eleventh Amendment is immediately appealable. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 121 L. Ed. 2d 605, 113 S. Ct. 684 (1993).
 
 II. Discussion
 
 11
 The central issue on appeal is whether the Eleventh Amendment bars Farricielli's RCRA claim against the Commissioner. The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity also protects a state from suits brought by its own citizens, see Edelman v. Jordan, 415 U.S. 651, 662-63, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974), such as this one, and extends to state officers who act on behalf of the state, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-02, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984), as the Commissioner argues in this case.
 
 
 12
 The Eleventh Amendment does not, however, confer immunity on state officials acting in violation of federal law. Under Ex Parte Young, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), "'the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws.'" Burgio & Campofelice, Inc. v. New York State Dep't of Labor, 107 F.3d 1000, 1006 (2d Cir. 1997) (quoting 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d 3566, at 102 (1984)). RCRA clearly contemplates that aggrieved citizens may bring suit to enforce its provisions, where applicable. Section 6972 states that "any person may commence a civil action on his own behalf . . . against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the Eleventh Amendment to the Constitution" to redress violations of RCRA. 42 U.S.C. 6972(a), (a)(1)(B). As this language makes clear, however, RCRA does not abrogate Eleventh Amendment immunity. See Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999); see also National Resources Defense Council v. California Dep't of Transp., 96 F.3d 420, 423 (9th Cir. 1996) (cited in Burnette).
 
 
 13
 Before this action can proceed against the Commissioner, therefore, Farricielli must identify the federal constitutional or statutory law the Commissioner threatens to violate. The record in this case does not provide sufficient guidance on this point. In his first amended complaint, Farricielli generally alleged that the Commissioner contributed to imminent and substantial endangerment of the environment because he had "no intention of taking meaningful enforcement action in response to [Q Group's] violations." Farricielli also specifically alleged that:
 
 
 14
 DEP [the Department of Environmental Protection] directed at least one waste hauler to dispose of potentially hazardous "sludge-like material" at the Property without proper characterization of that material.
 
 
 15
 DEP has prohibited Farricielli, or others acting on Farricielli's behalf, from inspecting and, as warranted, from preventing shipments of improper and unlawful wastes onto the Property for disposal, wastes which may present an imminent and substantial endangerment to health and the environment.
 
 
 16
 These allegations do not specify the provisions of RCRA that the Commissioner is alleged to have violated.
 
 
 17
 On appeal, Farricielli explains that the Commissioner's actions violated the "citizen suit" provision of RCRA quoted above, 42 U.S.C. 6972, and a provision requiring state plans submitted to the federal government to prohibit the establishment of new open dumps, see id. 6943(a)(2). The federal government has approved Connecticut's environmental plans under RCRA. See, e.g., 58 Fed. Reg. 65,591 (Dec. 15, 1993) (approving solid waste permit program); 55 Fed. Reg. 51,707 (Dec. 17, 1990) (approving hazardous waste management program). Key issues in this case, therefore, include whether the allegations based on the citizen suit provision of RCRA or the federal laws and regulations concerning the plan that the state submits to the federal government, either alone or in combination, suffice to state a violation of federal law as required by Ex Parte Young.[4] The decisions of the district court in this case do not address these, and many other, significant issues.
 
 
 18
 In these circumstances, we believe it is sound judicial administration to vacate the decision of the district court and remand for development of these and other relevant arguments before the district court. For example, the Commissioner argues, relying on Printz v. United States, 521 U.S. 898, 138 L. Ed. 2d 914, 117 S. Ct. 2365 (1997), that (1) under the Eleventh Amendment, the United States cannot compel the State of Connecticut to enforce a federal regulatory program for solid or hazardous waste; and (2) even assuming that it can, RCRA does not impose such a duty. See id. at 925 ("The Federal Government may not compel the States to implement, by legislation or by executive action, federal regulatory programs."). Similarly, the Commissioner points out that the "citizen suit" provision, 28 U.S.C. 6972(a)(1)(B) is so broadly worded that it cannot, by itself, constitute the required allegation of violation of a federal law under the Ex Parte Young doctrine.
 
 
 19
 Further, it is not clear to us whether Farricielli is alleging ongoing violations of federal law or merely objecting to the Commissioner's past decisions to exercise his discretion. Farricielli's allegation that the Commissioner intends to take no meaningful action against Q Group is belied by the fact that the Commissioner issued Notices of Violation, brought an enforcement action, and obtained a fine in the amount of over half a million dollars for Q Group's violations. Moreover, it is arguable that the object of Farricielli's suit is not to compel the Commissioner to cease ongoing violations of federal law, as Q Group no longer operates a facility on the site, but to require the State of Connecticut to clean up the site to compensate for the Commissioner's alleged failure to monitor the site. We express no view on this question. However, the Eleventh Amendment prohibits "an award of damages for a past violation of federal law, even though styled as something else." Papasan v. Allain, 478 U.S. 265, 278, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986) (citations omitted).
 
 
 20
 It is our settled practice to allow the district court to address arguments in the first instance. See, e.g., Herman v. Davis Acoustical Corp., 196 F.3d 354, 357-58 (2d Cir. 1999); Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 128 (2d Cir. 1999). On remand, the district court should begin its analysis of whether this case falls within the Ex Parte Young exception to Eleventh Amendment immunity by determining whether Farricielli has properly identified both a specific and ongoing violation of federal law by the Commissioner.
 
 Conclusion
 
 21
 For the foregoing reasons, we vacate the decision of the district court denying the Commissioner's motion to dismiss Count IX of the complaint and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable Cynthia Holcomb Hall, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.
 
 
 [1]
 Arthur J. Rocque, Jr. was not named as a defendant below. He appealed from the district court's decision "in his official capacity as Commissioner of the Department of Environmental Protection." For ease of reference, we will refer to both Holbrook and Rocque as "the Commissioner."
 
 
 [2]
 In February 1998, Q Group stipulated to payment of a $ 550,000 penalty, and judgment was entered pursuant to the settlement by order of Judge Aurigemma, Connecticut Superior Court.
 
 
 [3]
 Farricielli has since filed a third amended complaint in this action, naming as an additional plaintiff his company Quinnnipiack Real Estate and Development Corporation.
 
 
 [4]
 At least one court has concluded that the legislative history of the "open dumping" provision indicates that the state should not be subject to suit under the "open dumping" provision. See Ringbolt Farms Homeowners Ass'n v. Town of Hull, 714 F. Supp. 1246, 1258-60 (D. Mass. 1989).