423 F.3d 153
 Jacqueline J. MORRIS-HAYES, Plaintiff-Appellee-Cross-Appellant,
v.
BOARD OF EDUCATION OF THE CHESTER UNION FREE SCHOOL DISTRICT, Defendant-Cross-Appellee,
John M. Canzoneri, Michael Mallon, Mary Luciana, Christine David-Collins, Michael Monroe, and John Behler, Defendants-Appellants.
 Docket No. 04-2450-CV(L).
 Docket No. 04-2452-CV (XAP).
 United States Court of Appeals, Second Circuit.
 Argued: May 16, 2005.
 Decided: September 12, 2005.
 
 Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, NY, for Plaintiff-Appellee-Cross-Appellant.
 Mark C. Rushfield, Shaw & Perelson, L.L.P., Poughkeepsie, NY, for Defendant-Cross-Appellee and Defendants-Appellants.
 Before: MINER and SACK, Circuit Judges, and SPATT, Judge.*
 MINER, Circuit Judge.
 
 
 1
 Defendants-Appellants, John M. Canzoneri, Superintendent of Schools of the Chester Union Free School District, and Michael Mallon, Mary Luciana, Christine David-Collins, Michael Monroe, and John Behler, members of Defendant-Cross-Appellee Board of Education for the District (collectively, the "Individual Defendants"), appeal from an Interlocutory Order of the United States District Court for the Southern District of New York (Brieant, J.). The Order rejected the defense of qualified immunity interposed by the Individual Defendants in response to a claim brought against them by Plaintiff-Appellee-Cross-Appellant Jacqueline J. Morris-Hayes ("Morris-Hayes") under 42 U.S.C. § 1983 for violation of the Uniform Services Employment and Reemployment Rights Act ("USERRA").
 
 
 2
 Morris-Hayes cross appeals from an Interlocutory Order by the same court denying reconsideration of the dismissal of one of her claims against Defendant-Cross-Appellee, Board of Education of the Chester Union Free School District (the "Board"). The claim charged violations of USERRA and the New York Military Law and was dismissed by the District Court on the basis of Eleventh Amendment immunity, the Court having classified the Board as an entity of the State of New York. For the reasons that follow, we dismiss both the appeal and the cross-appeal.
 
 BACKGROUND
 
 3
 Morris-Hayes was hired by the Board as an Elementary School Principal in the Chester Union Free School District, and commenced employment in that capacity in August of 2001. At the time of her employment, the Board was aware that Morris-Hayes held a commission as a Major in the United States Army Reserve and, as such, was subject to calls to military training and active duty. On six separate occasions from October 2001 through October 2002, Morris-Hayes submitted leave requests to the Board for brief periods of military service. The military orders giving rise to the requests called for training and/or service for periods of one-to-three days at a time. During those periods, Morris-Hayes was unable to perform her duties as Elementary School Principal, and some of the Individual Defendants apparently expressed their displeasure over her absences.
 
 
 4
 According to the complaint, defendant Behler, a Board member, asked Morris-Hayes in July of 2002 to place his child in a "looping class" so that the child, a fourth-grade student, would remain with the same teacher for the fifth grade. Morris-Hayes denied the request as inconsistent with the policy for such placement. The School District Superintendent, defendant Canzoneri, then told her that Behler's child should be placed in the class. Morris-Hayes alleges that when she alluded to the appearance of favoritism in such a request, defendant Canzoneri told her "that there were `rumors' that she was taking too much time with her military reserve obligations, with specific reference to her military leave in June, which had coincided with `Moving-Up Day.'" On December 5, 2002, defendant Canzoneri notified Morris-Hayes, who was serving a probationary term as Elementary School Principal, that he would recommend to the Board that her employment be terminated. In response to a request for a statement of the reasons for the termination, defendant Canzoneri, on December 16, 2002, sent a letter to Morris-Hayes setting forth his reasons. As pleaded in the complaint:
 
 
 5
 Canzoneri claimed that plaintiff was inaccessible to staff and parents; that she failed to organize student activities for Board of Education Recognition Night; that she failed to honor his request to meet with clerical staff in her office; failed to timely complete class lists at the beginning of the school year; and had failed to note that "certain aspects of the curriculum" were not referenced on lesson plans and that certain requirements imposed by the mentor teachers were unrealistic.
 
 
 6
 Morris-Hayes provided a written response to the Canzoneri letter, with copies to the Board. In the letter, she disputed the reasons given by defendant Canzoneri and expressed the opinion that his recommendation was based on her military service requirements and her failure to accommodate the request of Board member Behler regarding class placement for his son. On January 13, 2003, the Board terminated the employment of Morris-Hayes, effective February 18, 2003.
 
 
 7
 The original complaint in this action was filed on January 23, 2003, and included two claims. In the first claim, Morris-Hayes charged all of the defendants with violations of the USERRA, 38 U.S.C. § 4311 et. seq., and New York Military Law § 342(4) in "terminat[ing][her] employment on account of her military service." In the second claim, Morris-Hayes charged all of the defendants with deprivation of her First Amendment rights, under 42 U.S.C. § 1983, for "terminat[ing][her] employment on account of her speech resisting defendant Behler's improper attempt to influence class placement."
 
 
 8
 By motion filed on January 29, 2004, the Board, as well as the Individual Defendants, moved for judgment on the pleadings dismissing the claims asserted by Morris-Hayes in her original complaint. The contentions put forward in the motion were: (1) the Board is the only entity against which the USERRA and New York Military Law claims could be asserted, and it is immune from suit in federal court on those claims under the Eleventh Amendment; (2) claims against the Board under USERRA must be brought in the state court; (3) the Board is entitled to assert Eleventh Amendment immunity as to the Section 1983 claim; and (4) the New York Military Law claim is barred by Section 3813 of the New York Education Law, requiring service of a notice of claim before an action may be brought against a school district.
 
 
 9
 By unpublished Memorandum and Order dated March 16, 2004, entered March 18, 2004, the District Court dismissed the claims made against the Board under the USERRA and the New York Military Law and denied the motion in all other respects. The District Court determined that the Board is an arm of the State of New York, applying the test set forth in Rosa v. Connelly, 889 F.2d 435, 437 (2d Cir.1989): "To determine whether a local board of education is an arm of the state and thus entitled to Eleventh Amendment protection from suit in federal court, [a] court must determine the degree to which the entity is supervised by the state and the entity's source of funds for satisfying judgments against it." Also cited was a New York Court of Appeals decision, Lanza v. Wagner, 11 N.Y.2d 317, 326-27, 229 N.Y.S.2d 380, 183 N.E.2d 670 (1962) (describing a school district as "an independent corporation created by the state for the purpose of carrying on a purely state function"), as well as two unpublished opinions issued by the District Court itself.
 
 
 10
 As to the USERRA and New York Military Law claims against the Individual Defendants, the District Court determined that they were not "employers" within the statutory definition of those prohibited from discriminating on the basis of military service. The court noted that New York Education Law § 3012(b) authorizes termination of probationary employees only by boards of education, that a majority vote of the board is required for termination, and that Morris-Hayes was fired by the Board as an entity, not by the individual members of the Board or the Superintendent.
 
 
 11
 After putting forth the reasons for the dismissal of the USERRA and New York Military Law claims against the Board and the Individual Defendants, the District Court expressed its "deep[] concern[] that a member of the military in time of war should be denied the protection of an Act of Congress, of universal application, simply because she happens to be employed by an arm of the State of New York." The court observed that, if there was any discrimination because of military service, it would "represent[] the unauthorized act of a few individuals acting under color of state law and in violation of their public trust."
 
 
 12
 In view of the foregoing observations, the court determined that an action under 42 U.S.C. § 1983 could be maintained by Morris-Hayes against the Individual Defendants to redress the denial of her federal statutory rights under USERRA. To support that determination, the court cited Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.1998), for the proposition that "a § 1983 claim may be maintained whenever a defendant acting under color of state law denies a plaintiff her federal rights." The District Court concluded that "the individual defendants acting under color of state law violated [Morris-Hayes's] federal statutory rights as a military reservist," and that "[t]his wrong doing is actionable under 42 U.S.C. § 1983, as is retaliation for speaking out against favoritism in class assignment, a matter of public interest and therefore First Amendment protected speech." The court noted that enforcement of the USERRA through Section 1983 was not briefed by the parties but provided that Morris-Hayes could "if so advised, file an amended complaint consistent with the foregoing, but this [was] not required." The court declined to enter final judgment as to any parties or claims pursuant to Fed.R.Civ.P. 54(b).
 
 
 13
 Morris-Hayes did in fact file an amended complaint on March 22, 2004, adding a claim alleging as follows: "Defendants wilfully and knowingly terminated plaintiff's employment on account of her military service, violating her Federal statutory rights as a military reservist, as made actionable through 42 U.S.C. § 1983." In response to her request for clarification, the District Court on March 22, 2004, issued a further Memorandum and Order. It provided that all claims against the Board were dismissed, that the USERRA and New York Military Law claims against the Individual Defendants were dismissed, and that "[a]ll claims pursuant to 42 U.S.C. § 1983 as against the [I]ndividual Defendants remain[ed], and [were] not dismissed." It also provided that "[n]o interlocutory judgment will be signed."
 
 
 14
 Prior to the issuance of the Memorandum and Order of March 22, Morris-Hayes had moved for reconsideration of the dismissal of her claim against the District and to certify the Eleventh Amendment issue to this Court. After the issuance of the March 22 Memorandum and Order, the Individual Defendants sought dismissal on the ground of qualified immunity as to the claim added in the amended complaint. In an oral decision issued from the Bench on April 2, 2004, the District Judge rejected the claim of qualified immunity, stating, in part: "I don't see how anybody in education is so foolish or so uninformed to think that you can lawfully discriminate against somebody in connection with his work because he or she has a military obligation. I just can't imagine that." As to the Eleventh Amendment immunity issue, the court adhered to its prior determination that precedent dictated that the Board of Education be considered an arm of the State. Challenging those determinations, this appeal and cross-appeal followed.
 
 ANALYSIS
 
 15
 (a) The Appeal: Qualified Immunity and the Enforceability of USERRA under Section 1983.
 
 Title 42 U.S.C. § 1983 provides:
 
 16
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 
 
 17
 It is settled that § 1983 authorizes actions to enforce the rights of individuals under federal statutes as well as under the Constitution. See Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). USERRA is a federal statute that contains a protected federal right. It provides:
 
 
 18
 A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
 
 
 19
 38 U.S.C. § 4311(a).
 
 
 20
 In accordance with her amended pleading asserting an additional claim under § 1983, Morris-Hayes proposed to prove (1) that the Individual Defendants acted under color of state law when, as members of the Board, they terminated her employment; and (2) that as a result of their actions she suffered denial of her federal rights under USERRA, which protects against employment discrimination based on military service obligations. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.1998) (setting forth the elements of a § 1983 claim). The Individual Defendants sought to defeat this claim in the District Court on the basis of qualified immunity. As public officials, they are protected by qualified immunity from civil liability for actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Poe v. Leonard, 282 F.3d 123, 132 (2d Cir.2002).
 
 
 21
 Accordingly, Morris-Hayes cannot prevail without a showing that the Individual Defendants violated "clearly established statutory ... rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We have jurisdiction to review the denial of a motion for judgment on the pleadings based on qualified immunity when the immunity can be ascertained as a matter of law on the version of the facts advanced by plaintiff. Cf. Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir.2005). An interlocutory order denying qualified immunity is appealable because it answers the question of whether or not there will be a trial. See LaTrieste Rest. & Cabaret v. Village of Port Chester, 96 F.3d 598, 599 (2d Cir.1996).
 
 
 22
 Addressing the issue of qualified immunity, the District Judge stated that he did not "see how anybody in education is so foolish or so uninformed to think that you can lawfully discriminate against somebody in connection with his work because he or she has a military obligation." In effect, the District Court determined that the actions of the Individual Defendants in firing Morris-Hayes were not "objectively reasonable" and therefore rejected the defense of qualified immunity.
 
 
 23
 Although this interlocutory appeal is properly before us in the first instance because it challenges the denial of qualified immunity as a defense to the enforcement of USERRA through § 1983, we find it unnecessary to pass on the viability of the qualified immunity defense in this case. Instead, we hold that USERRA is not a statute for which redress is available against the Individual Defendants under § 1983. We therefore dismiss the appeal on the ground that the issue of qualified immunity is moot.
 
 
 24
 It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere. See Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). But even where it can be demonstrated that a particular federal statute establishes an individual right,
 
 
 25
 there is only a rebuttable presumption that the right is enforceable under § 1983. Because [the] inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983." Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.
 
 
 26
 Blessing v. Freestone, 520 U.S. 329, 340-41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citations omitted).
 
 
 27
 In issuing the interlocutory orders in this case, the learned District Court did not have the benefit of the Supreme Court's opinion in City of Rancho Palos Verdes, California, et al. v. Abrams, ___ U.S. ___, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005), which was decided on March 22, 2005. The respondent there proposed to construct an antenna tower on his property and sought to enforce against the petitioners the limitations on local zoning authority set forth in § 332(c)(7)(B)(v) of the Telecommunications Act of 1934, 47 U.S.C. § 332(c)(7), as amended by the Telecommunications Act of 1996 ("TCA"). Specifically, the Supreme Court inquiry was directed to whether the respondent could enforce his federal statutory rights under the TCA by bringing an action under § 1983. Id. at 1462 (inquiring "whether the rights created by [the TCA] may be asserted within the remedial framework of [§ 1983]" (alteration and emphasis in original)).
 
 
 28
 Under § 332(c)(7) of the TCA, "local governments may not `unreasonably discriminate among providers of functionally equivalent services,' § 332(c)(7)(B)(i)(I), take actions that `prohibit or have the effect of prohibiting the provision of personal wireless services,' § 332(c)(7)(B)(i)(II), or limit the placement of wireless facilities `on the basis of the environmental effects of radio frequency emissions,' § 332(c)(7)(B)(iv)." Id. at 1455-56. Local governments "must act on request for authorization to locate wireless facilities `within a reasonable period of time,' § 332(c)(7)(B)(ii), and each decision denying such a request must `be in writing and supported by substantial evidence contained in a written record,' § 332(c)(7)(B)(iii)." Id. at 1456.
 
 
 29
 Most importantly, the Supreme Court noted that
 
 
 30
 [a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within thirty days after such action or failure to act, commence an action in any court of competent jurisdiction.
 
 
 31
 Id. (quoting 47 U.S.C. § 332(c)(7)(B)(v)). Moreover the Court noted that the TCA provides that courts must "hear and decide" such an action "on an expedited basis." Id. at 1459 (quoting § 332(c)(7)(B)(v)). In reversing the Ninth Circuit, which allowed the petitioner to maintain an action grounded in the provisions of the TCA but enforced by an action brought under Section 1983, the Supreme Court explained that "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law ... [and that] § 1983 permits the enforcement of rights, not the broader or vaguer benefits or interests." Id. at 1458 (emphasis in original; internal quotation marks omitted).
 
 
 32
 In Abrams, the Court reiterated its teaching that "`the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" Id. (quoting Alexander v. Sandoval, 532 U.S. 275, 290, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). "[I]n all of the cases in which [the Supreme Court has] held that § 1983 is available for violation of a federal statute, [the Court has] emphasized that the statute at issue, ... did not provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." Id. at 1459 (emphasis in original).
 
 
 33
 To be sure, the Abrams Court made clear its position that Congress's inclusion of a private judicial remedy does not "conclusively establish[ ]" congressional intent to preclude an action brought under § 1983. Id. "The ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." Id. In the case of the TCA, however, the Abrams Court found nothing to rebut the ordinary inference. Indeed, the Court noted that "[l]iability for attorney's fees would have a particularly severe impact in the § 332(c)(7) context, making local governments liable for the (often substantial) legal expenses of large commercial interests for the misapplication of a complex and novel statutory scheme." Id. at 1460; see also id. at 1462 (2005) (Breyer, J., concurring) (looking at "context" and concluding that "to permit § 1983 actions here would undermine the compromise—between purely federal and purely local siting policies—that the statute reflects").
 
 
 34
 In this case, similarly, USERRA provides a comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States. In Rumsey v. New York State Dep't of Corr. Servs., 19 F.3d 83 (2d Cir.1994), we examined the statute that was the predecessor to USERRA, the Veterans Reemployment Rights Act ("VRRA"). In determining that the VRRA provided the exclusive remedy for the plaintiffs, we reasoned:
 
 
 35
 The enforcement scheme of the Veterans' Act is particularly detailed and comprehensive. It provides a plaintiff with a private right of action through injunctive relief, compensatory damages in the form of lost wages and/or benefits, and the assistance of the United States attorney. Further, no fees or court costs may be assessed against a person seeking benefits under the Act. These provisions evidence a statutory remedial scheme [which] is so comprehensive that there is an implication that it provides the exclusive remedy foreclosing all other remedies.
 
 
 36
 Rumsey, 19 F.3d at 93 (internal quotation marks omitted; citations omitted; alterations omitted). The USERRA, like its predecessor, sets forth detailed procedures to vindicate service-members' statutory rights. See 38 U.S.C. §§ 4321-26. In particular, 38 U.S.C. § 4323 details the litigation options and remedies for an individual who seeks to bring a private right of action without the assistance of the Secretary of Labor or the Attorney General. We find no indication that Congress intended to repudiate our prior determination that such a comprehensive scheme would be distorted by permitting enforcement by means of actions brought under Section 1983.
 
 
 37
 Moreover, Morris-Hayes is also unable to point to any "indication, express or implicit, that the remedy is to complement, rather than supplant, [Section] 1983." Abrams, 125 S.Ct. at 1459. She argues on appeal that her right to enforce USERRA through § 1983 is preserved by the savings clause contained in USERRA. The clause provides that:
 
 
 38
 Nothing in this chapter [38 U.S.C. §§ 4301 et seq.] shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter [38 U.S.C. §§ 4301 et seq.].
 
 
 39
 38 U.S.C. § 4302(a).
 
 
 40
 The argument is unavailing for the same reasons given by the Supreme Court in Abrams. In that case, the TCA included a savings clause that provided: "This Act and the amendments made by this Act shall not be construed to modify, impair or supersede Federal, State or local law unless expressly so provided in such Act or amendments." TCA § 601(c)(1), 110 Stat. 143, note following 47 U.S.C. § 152. Rejecting the Court of Appeals's opinion that the savings clause was an expression of congressional intent not to preclude a § 1983 action, the Court reasoned as follows:
 
 
 41
 Construing [the TCA] as we do, to create rights that may be enforced only through the statute's express remedy, leaves the pre-TCA operation of § 1983 entirely unaffected. Indeed, the crux of our holding is that [the TCA] has no affect on § 1983 whatsoever: The rights . . . created may not be enforced under § 1983 and, conversely, the claims available under § 1983 prior to the enactment of the TCA continued to be available after its enactment. The savings clause of the TCA does not require a court to go farther and permit enforcement under § 1983 of the TCA's substantive standards.
 
 
 42
 Abrams, 125 S.Ct. at 1461-62. In like manner, the savings clause of USERRA is of no benefit to Morris-Hayes.
 
 
 43
 (b) The Cross-Appeal: Eleventh Amendment Immunity and Appealability.
 
 
 44
 Asserting that the District Court erred in affording Eleventh Amendment immunity to the Board by classifying it as a state actor, Morris-Hayes purports to interpose a cross-appeal from the District Court's ruling. That ruling came in the form of an interlocutory or non-final order, as the District Court permitted claims against the Individual Defendants to remain in this action.
 
 
 45
 With few exceptions, our jurisdiction over appeals is confined to final decisions. See 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . ." (emphasis supplied)). In reviewing the limited scope of exceptions to the rule of finality, the Supreme Court has recognized the appealability of interlocutory orders denying claims of absolute immunity in the following language:
 
 
 46
 Under the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), a small class of interlocutory orders are immediately appealable to the courts of appeals. As defined by Cohen, this class embraces orders that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." As an additional requirement, Cohen established that a collateral appeal of an interlocutory order must "[present] a serious and unsettled question." As least twice before this Court has held that orders denying claims of absolute immunity are appealable under the Cohen criteria. See Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (claim of immunity under the Speech and Debate Clause); Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (claim of immunity under Double Jeopardy Clause).
 
 
 47
 Nixon v. Fitzgerald, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (citations omitted).
 
 
 48
 In a later case, the Court noted that "the denial of a substantial claim of absolute immunity is an order appealable before a final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citations omitted). See generally Wright et al., Federal Practice & Procedure, § 3911 (2d ed.1992).
 
 
 49
 Eleventh Amendment immunity is a form of absolute immunity. Accordingly, when the Supreme Court was confronted with the question whether "a district court order denying a claim by a State or a state entity to Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine of [Cohen]," it answered the question in the affirmative. Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 143, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Whether an interlocutory order granting Eleventh Amendment immunity is appealable is not so well settled. The First Circuit, extending the holding of Metcalf & Eddy, has held that an interlocutory appeal "is proper as to the Eleventh Amendment issue, as pre-trial orders granting or denying Eleventh Amendment immunity are immediately appealable." Rosie D. v. Swift, 310 F.3d 230, 233 (1st Cir.2002) (citing Metcalf & Eddy, 506 U.S. at 141, 113 S.Ct. 684) (emphasis supplied); see also Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority, 991 F.2d 935, 937 (1st Cir.1993) (noting that the Supreme Court "resolv[ed] an existing split in the circuits, [and] determined that pre-trial orders granting or denying Eleventh Amendment immunity were immediately appealable"). The Supreme Court in Metcalf & Eddy, however, never held that an order granting immunity could be appealed from prior to the entry of a final judgment.
 
 
 50
 We never have interpreted Metcalf & Eddy to permit appeals from interlocutory orders granting Eleventh Amendment immunity, citing it only for the proposition for which it stands: the appealability of orders denying Eleventh Amendment immunity. For example, in Farricielli v. Holbrook, 215 F.3d 241 (2d Cir.2000), we stated that "[a]lthough [a] case is still pending in the [D]istrict [C]ourt, [this Court] has jurisdiction to hear [the] appeal because an order denying immunity under the Eleventh Amendment is immediately appealable." 215 F.3d at 244 (citing Metcalf & Eddy, 506 U.S. at 144, 113 S.Ct. 684); see also In re: Charter Oak Assocs., 361 F.3d 760, 764 (2d Cir.2004) (citing Metcalf & Eddy for the general proposition that denial of sovereign immunity is immediately appealable under [the] collateral order doctrine (emphasis added)).
 
 
 51
 With respect to interlocutory orders relating to qualified immunity, we have noted the following: "All circuits that have considered whether the collateral order doctrine confers appellate jurisdiction over appeals arising from a grant of partial summary judgment based on qualified immunity have universally held that such a judgment is not immediately appealable." LaTrieste Rest. & Cabaret, 96 F.3d at 599. In joining our sister circuits, we explained that the reason for not allowing an interlocutory appeal of an order granting qualified immunity is that "[a] grant of summary judgment based on qualified immunity does not lead to any loss of [a] right that cannot be remedied on appeal." Id.; see also Charter Oak Assocs., 361 F.3d at 765 n. 2 (stating that "interlocutory orders favoring an invocation of sovereign immunity are not immediately appealable" (citing LaTrieste Rest. & Cabaret, 96 F.3d at 599-600)); accord Winfrey v. School Bd. of Dade County, 59 F.3d 155, 158 (11th Cir.1995) ("Unlike an order denying summary judgment based on qualified immunity, an appellant's objection to the district court's order [granting summary judgment] is in no danger of becoming moot if appellate consideration is delayed until final judgment." (alterations in original) (internal quotation marks omitted)).
 
 
 52
 The same rationale leads us to conclude that an interlocutory order granting Eleventh Amendment immunity likewise is non-appealable. The Order of the District Court granting such immunity to the Board therefore is not properly before us, and we are constrained to dismiss the cross-appeal of Morris-Hayes. In doing so, we reject her contention that we may exercise pendent appellate jurisdiction over her challenge to the District Court's finding of Eleventh Amendment immunity.
 
 
 53
 Pendent appellate jurisdiction may be exercised where an immunity issue is properly raised on appeal and issues inextricably intertwined with that immunity issue are implicated. See Toussie v. Powell, 323 F.3d 178, 184 (2d Cir.2003). Consideration must be given to the question of whether there was "sufficient overlap in the factors relevant to the appealable and nonappealable issues." Kaluczky v. City of White Plains, 57 F.3d 202, 207 (2d Cir.1995). To secure the pendent appellate review that she seeks, Morris-Hayes must show "substantial factual overlap bearing on the issues raised." Freeman v. Complex Computing Co., 119 F.3d 1044, 1050 (2d Cir.1997). She has here shown no overlap of factual, or for that matter legal, issues. Qualified immunity as it pertains to Section 1983 claims and Eleventh Amendment immunity are separate and distinct as to their legal elements. The parties asserting these immunities in this case are different: the Individual Defendants claimed qualified immunity, and the Board claimed Eleventh Amendment immunity. The facts asserted to support each of these defenses were different. The test for pendent appellate jurisdiction simply has not been met here.
 
 
 54
 Although we are without jurisdiction to review the District Court's determination that Eleventh Amendment immunity bars the action against the Board, the District Court on remand is free to review this issue. In this regard, we would invite the District Court's attention to the test that we prescribed in McGinty v. New York, 251 F.3d 84, 95-96 (2d Cir.2001), for determining whether an entity is an arm of the state. In McGinty, we enumerated six factors to be considered, and stated:
 
 
 55
 If these factors point in one direction, the inquiry is complete. If not, a court must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk. If the answer is still in doubt, a concern for the state fisc will control.
 
 
 56
 Id. at 96 (citation omitted).
 
 CONCLUSION
 
 57
 For the foregoing reasons, we dismiss the appeal as well as the cross-appeal. The case is remanded to the District Court for further proceedings not inconsistent with the foregoing.
 
 
 
 Notes:
 
 
 *
 The Honorable Arthur D. Spatt, United States District Court for the Eastern District of New York, sitting by designation