Dilfanian v. N.Y.C. Dep't of Educ.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of June, two thousand seventeen.

PRESENT: DENNIS JACOBS,
        BARRINGTON D. PARKER,
        DEBRA ANN LIVINGSTON,
           Circuit Judges,

- - - - - - - - - - - - - - - - - - - - -X
RAMIN DILFANIAN,
        Plaintiff-Appellant,

        -v.-                     16-1428

NEW YORK CITY DEPARTMENT OF EDUCATION,
MAUREEN A. GOLDFARB,
        Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:                ANTHONY OFODILE, Ofodile & Associates, P.C., Brooklyn, NY.

1

**FOR APPELLEES:**                    ANTONELLA KARLIN (Devin
                                      Slack, on the brief), for
                                      Zachary W. Carter,
                                      Corporation Counsel of the
                                      City of New York, New York,
                                      NY.


Appeal from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **VACATED AND REMANDED.**

Ramin Dilfanian appeals from a judgment of the United States District Court for the Eastern District of New York (Vitaliano, J.) granting summary judgment to the appellees on Dilfanian's wrongful termination claim brought pursuant to the Uniformed Services Employment & Reemployment Rights Act, 38 U.S.C. § 4301 et seq. ("USERRA"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Dilfanian was as an Assistant Principal for Supervision of Mathematics at New Utrecht High School ("NUHS") in Brooklyn, New York from 2006 to 2010. During that period, he also served as a Major in the United States Army Reserves. He was terminated from NUHS at the conclusion of the 2009-10 academic year at the recommendation of NUHS's Principal, Maureen Goldfarb. Dilfanian sues the New York City Department of Education ("DOE") and Goldfarb, alleging that his termination violated USERRA because it was motivated by Golfarb's frustration at his potential military deployment.

USERRA forbids an employer to deny "employment, reemployment, retention in employment, promotion, or any benefit of employment" based on a person's "membership" in or "obligation to perform service in a uniformed service," 38 U.S.C. § 4311(a), and provides that liability is established "if the person's membership . . . is a motivating factor in the employer's action," id. § 4311(c).

2

In adjudicating a claim brought under USERRA, courts apply the burden-shifting framework approved by the Supreme Court in NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 401 (1983), for actions brought under the National Labor Relations Act.  See Gummo v. Vill. of Depew, 75 F.3d 98, 106 (2d Cir. 1996).

> Under that scheme, a claimant carries his burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was 'a substantial or motivating factor in the adverse [employment] action'; but the employer may nonetheless escape liability by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status.

Id. (quoting NLRB, 462 U.S. at 401).

The district court dismissed the complaint on summary judgment, ruling that Dilfanian failed to make out a prima facie case of discrimination, and that, in any case, his performance issues demonstrate that he would have been terminated regardless of his military service.

We review de novo a district court's grant of summary judgment, see Sousa v. Marquez, 702 F.3d 124, 127 (2d Cir. 2012), and will affirm only if, construing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 137 (2d Cir. 2010) (internal quotation marks and brackets omitted).  In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**1.** Prima Facie Case.  Dilfanian argues that a rational juror could conclude that his termination was motivated, at least in part, by Goldfarb's frustration at his potential military deployment.  We agree.

3

Goldfarb's frustration is evidenced by her alleged behavior on and after October 30, 2009, when Dilfanian received orders regarding a possible one-year deployment to Afghanistan. First, Dilfanian testified that when he showed Goldfarb his deployment letter on October 30, she threw it on her desk and stated, "[Y]ou're going to leave a broken department behind," and "[H]ow can you do that to me?  I am stuck with cleaning up . . . the mess."  App'x at 323.  A rational juror could construe this reaction as Goldfarb personalizing the deployment as something Dilfanian was doing to her rather than a legal obligation imposed on them both.

Second, while Dilfanian was away from the school the following week (November 2-6) attending a pre-deployment planning session, Goldfarb filed a disciplinary letter regarding Dilfanian's inadvertent absence from a meeting seven weeks earlier.  The letter warned Dilfanian that "[t]his incident may lead to further disciplinary action, including an unsatisfactory rating and charges that can lead to your termination."  App'x at 272.  According to Dilfanian, Goldfarb had told him and his union representative in September that she would not issue a disciplinary letter unless he missed another meeting, which he did not.  Goldfarb does not explain why she filed the disciplinary letter when Dilfanian was away on pre-deployment, seven weeks after the missed meeting.  She simply cites DOE regulations requiring that disciplinary letters be filed within ninety days of the underlying incident.

Third, during Dilfanian's first three years as assistant principal at NUHS, he received satisfactory ratings and (the record indicates) no disciplinary letters.  Yet in the eight months after notifying Goldfarb of his planned deployment, he received an unsatisfactory rating and three disciplinary letters, and was subsequently terminated.  Moreover, Goldfarb conceded that during her six years at NUHS, Dilfanian was the only assistant principal whom she rated (post-deployment notice) as unsatisfactory; and aside from a Coast Guard veteran who left within a few months of Goldfarb's arrival, Dilfanian was apparently the only service member on staff.

4

Fourth, Dilfanian testified that after he received the deployment order, Goldfarb stopped being friendly and ceased informal communications with him.

Fifth, at a NUHS "cabinet" meeting of assistant principals shortly after Dilfanian received the deployment order, Goldfarb announced that military recruiters (who had previously been permitted to visit classes) would no longer be allowed in the school except on career day.[1]

Dilfanian testified that during two other cabinet meetings following the deployment letter, Goldfarb signaled a desire to get rid of him. At one, Goldfarb announced that she was "cleaning house," stared and pointed a wand at Dilfanian, and said to him (and only him), "poof, be gone." App'x at 121. At another, the school's math coach (who was not an assistant principal and thus not a cabinet member) was invited to stay and eat after giving a presentation. When the math coach hesitated, Goldfarb looked at Dilfanian, then turned back to the math coach and said, "if you want to join us at the cabinet, you need to eat like us." App'x at 115. The only way the math coach could have joined the cabinet was as Dilfanian's replacement in the position of Assistant Principal of Mathematics. When Dilfanian was terminated, that is just what happened.

Finally, Dilfanian requested Goldfarb's endorsement for a training program that would qualify him to become a principal. According to Dilfanian, Goldfarb failed to sign the necessary paperwork by the deadline (which was after he received the deployment order), and, as a result, he missed the opportunity.

Although it is a close call, we believe that this evidence, when viewed in the light most favorable to Dilfanian, is sufficient to preclude summary judgment. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show

[1] This policy was in line with existing DOE regulations (which prohibited recruiters from being given unfettered access to students), but it was a break with school practice.

5

discrimination." (internal quotation marks omitted)); <u>Gummo</u>, 75 F.3d at 107 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."); <u>see also</u> <u>Anderson</u>, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").

Appellees contend that any inference of discrimination that can be drawn from Goldfarb's behavior is negated by the fact that Dilfanian did not end up deploying.  The thrust of this argument is that the deployment order ceased to be a factor once Dilfanian managed to avoid it.  However, a juror could rationally conclude that the deployment order caused Goldfarb to consider the prospect of losing an assistant principal suddenly and for a prolonged period of time.  (Unlike typical Army Reserve units, Dilfanian's special operations unit could apparently be deployed at any time with three days' notice.)  In other words, one could find that the deployment order made real for Goldfarb the risk of having to operate without one of her critical staff members on a moment's notice.[2]

---

[2] Because Goldfarb heavily influenced the decision to terminate Dilfanian, the fact that individuals with no alleged anti-military bias reviewed and authorized the termination does not preclude his USERRA claim (and appellees do not contend otherwise).  <u>See</u> <u>Staub v. Proctor Hosp.</u>, 562 U.S. 411, 422 (2011) (holding that "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA" (emphasis omitted)); <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual at any stage . . . may taint the ultimate employment decision in violation of Title VII.  This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decisionmaking] process." (internal citation omitted)).

**2.** <u>Affirmative Defense</u>.  Appellees argue that Dilfanian's performance problems during his final year at NUHS were so significant that he would have been terminated regardless of Goldfarb's motives.  They cite a number of incidents to support this contention.

First, Dilfanian forgot to attend a meeting in Goldfarb's office.  He testified that, at the time, he was in his office speaking with the school's math coach.

Second, while inspecting test materials in preparation for an Advanced Placement English Literature exam, Dilfanian (and another testing coordinator) failed to notice that the state had erroneously sent English Language exam booklets.  The test had to be rescheduled, and one student missed it.

Third, Goldfarb alleged that Dilfanian provided inadequate guidance to teachers on a number of occasions, and that students were performing below expectations.  (Dilfanian refuted these allegations in a detailed and thoughtful response.)

Finally, Dilfanian was absent from school on Friday, May 14, a day when he was supposed to perform an important role in a professional development session.  On Monday of that week, he received military orders to report to Fort Dix, New Jersey on the Thursday and to remain through the weekend.  Rather than miss school, he arranged with his superior officer to arrive at Fort Dix after the school day on Thursday and be excused from duty altogether on Friday.  Because he had worked out similar arrangements in the past, he did not warn Goldfarb.  However, on Thursday night, a one-star general requested that Dilfanian personally give a briefing the following day.  Accordingly, Dilfanian notified the school early Friday morning that he would be out (which was the normal procedure for unexpected teacher absences).  At that point, however, it was too late to reschedule the professional development session, which had to be reorganized in light of Dilfanian's absence.

These alleged performance problems were not so egregious that a rational juror must conclude that his termination would have occurred regardless of his military service.

Accordingly, we hereby **VACATE** the judgment of the district court and **REMAND** for further proceedings.[3]

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

---

[3] We decline to reach whether Goldfarb may be held individually liable under USERRA.  The district court should do so in the first instance.  See Farricielli v. Holbrook, 215 F.3d 241, 246 (2d Cir. 2000) (per curiam) (observing that "[i]t is our settled practice to allow the district court to address arguments in the first instance").