Litza D. LOPEZ, as the mother and natural Guardian of her minor son, Edwin Aleman, Plaintiff,

v.

BAY SHORE UNION FREE SCHOOL DISTRICT, Defendant.

No. 09–CV–502 (ADS)(ARL).

United States District Court, E.D. New York.

Nov. 9, 2009.

Paul L. Dashefsky, Esq., Smithtown, NY, for Plaintiffs.

Cruser Mitchell & Novitz LLP, by Keith V. Tola, Esq., Rondiene Erin Novitz, Esq., of Counsel, Melville, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of the suspension and vindication of Edwin Aleman, a student at Bay Shore High School in Bay Shore, NY. Aleman was suspended from school for a year in the spring of 2008 for allegedly making certain remarks in school related to MS–13, a violent criminal street gang. Aleman appealed his suspension to the New York State Commissioner of Education, who reversed and ordered the suspension expunged from his record. Through his mother and guardian Litza D. Lopez, Aleman now brings this suit against Bay Shore Union Free School District ("Bay Shore School District") seeking damages pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000d, and 20 U.S.C. § 1703 *et seq.* The defendant has moved for judgment on the pleadings in its favor on all of the plaintiffs' claims.

## I. BACKGROUND

The following alleged facts are derived from the plaintiffs' complaint. Although at

least some of these facts are disputed by the defendant, the Court takes all the alleged facts to be true for purposes of this motion to dismiss.

The minor plaintiff, Edwin Aleman, is a native of Honduras, and has resided legally in the United States since July 2006. Aleman became a naturalized citizen of the United States in November 2007. His first language is Spanish, and for the entirety of his career at Bay Shore High School he has been classified as "limited English proficient," and has been entitled to "English as a Second Language" services. Aleman lives with his mother, plaintiff Litza Lopez, whose primary language is also Spanish. Aleman was a tenth-grade student at Bay Shore High School when the events in question took place.

Two events precipitated the alleged violations of Aleman's rights. First, on February 12, 2008, Aleman was waiting for a school bus outside Bay Shore High School when he observed his friend, Francisco Baires, enter into a verbal altercation with another student, Trey Scott. Then, on February 13, 2008, Aleman was standing next to Baires outside a classroom in Bay Shore High School when Baires asked another student, Angel Perez, "Did you say MS was pussy?" "MS" is apparently a shortened name for MS–13, a violent criminal street gang.

Andrew Sullivan, who is the Dean of Students for the tenth and twelfth grades at Bay Shore High School, interviewed Aleman regarding the incident in which Baires stated "Did you say MS was pussy?" Sullivan had not witnessed this or the previous incident. Sullivan conducted the interview in English, and there was some confusion as to whether Aleman admitted to making the statement himself, due to Aleman's lack of proficiency in English.

On February 15, 2008, the defendant Bay Shore School District sent a letter to Aleman's mother, Ms. Lopez, stating that Aleman had been suspended from school for February 25 through February 29 because of "prohibited group affiliation, inciting violence and insubordination." (Compl. ¶ 13.) This letter was written in English. Ms. Lopez's native language is Spanish.

On February 20, 2008, Bay Shore School District provided a second letter to the plaintiffs, scheduling a hearing before a designee of the Bay Shore School District's Superintendent for February 29, 2008. According to the letter, the hearing officer would determine whether Aleman would be suspended for a longer period as a result of "the infractions[s] of prohibited group affiliation, inciting violence, and insubordination." (Compl. ¶ 15.) This letter was also written entirely in English.

On February 25, 2008, the plaintiffs sent a letter by facsimile to Bay Shore School District objecting to (1) the vagueness and ambiguity of the disciplinary charges against Aleman, and (2) the failure of the defendant to provide a Spanish translation of the letters they sent to the plaintiffs on February 15 and February 20. In this letter, the plaintiffs also requested to meet with the Bay Shore School District administration concerning Aleman's suspension. The request to meet with an administrator was not granted, but sometime between September 25 and September 29, Bay Shore School District did send the plaintiffs Spanish translations of the February 15 and February 20 letters.

On February 28, 2008, Bay Shore School District provided the plaintiffs with an "Amended Notice of Disciplinary Hearing of Edwin Aleman," stating:

> CHARGE # 1: Prohibited Group Affiliation

On or about February 13, 2008, on the grounds of the Bay Shore High School, Edwin Aleman, a tenth grade student at the Bay Shore High School engaged in activity, was affiliated with, and/or made a communication in connection with a non-school sanctioned group, fraternal organization or gang by asking another student "Did you say that MS was pussy?"

On or about February 10, 2008, on or near the grounds of the Bay Shore High School, Edwin Aleman, a tenth grade student at the Bay Shore High School, engaged in an activity, was affiliated with, and/or made a communication in connection with a non-school sanctioned group, fraternal organization, or gang by flashing gang signs at another student from a motor vehicle.

CHARGE # 2: Inciting Violence/Menacing

On or about February 12, 2008, on the grounds of the Bay Shore High School, Edwin Aleman, a tenth grade student at the Bay Shore High School planned to participate in a violent, unsafe, or illegal act by attempting to engage another student in a fight.

(Compl. ¶ 20.) The plaintiffs do not allege whether or not Bay Shore School District provided a Spanish translation of this letter.

On February 29, 2008, Bay Shore School District held a hearing concerning the charges against Aleman. At the commencement of the hearing, Bay Shore School District withdrew the second paragraph of Charge # 1. Thereafter, Bay Shore School District called a single witness, Dean of Students Andrew Sullivan.

Sullivan testified that certain individuals, not present at the hearing, made statements to him implicating Aleman in the acts alleged. Aleman was not given the opportunity to question the individuals who made these statements. Sullivan also testified to the confusion surrounding whether Aleman admitted to making the statement concerning "MS".

On March 12, 2008, Bay Shore School District determined that Aleman was guilty of "Charge # 1," entitled "prohibited group affiliation." There was no determination as to "Charge # 2." Bay Shore School District suspended Aleman from regular attendance at school for approximately one year, until February 1, 2009. On April 14, 2008, the plaintiffs appealed this decision to the Bay Shore School District Board of Education, and on May 29, 2008, the appeal was denied. The plaintiffs thereafter appealed to the New York State Commissioner of Education.

While the plaintiffs' appeal was pending, the Bay Shore School District advised Aleman to return to regular school attendance at the beginning of the 2008/2009 school year. Aleman began attending classes in September 2008, but it is alleged that the Bay Shore School District soon "threatened Edwin Aleman and forced him again to cease attending classes." (Compl. ¶ 40.)

On October 1, 2008, the New York State Commissioner of Education granted Aleman's appeal, ordered his suspension annulled and expunged, and ordered Bay Shore School District to re-admit Aleman.

Aleman thereafter returned to school at Bay Shore High School, and joined the school's track team. Shortly before December 25, 2008, Bay Shore School District informed Aleman that he had been placed on an "ineligible list" as a result of his suspension. This was in spite of the fact that Aleman's suspension had been ordered expunged from his record. As a result, Aleman was not permitted to participate in a track meet on December 27, 2008.

On February 6, 2009, the plaintiffs filed the present action seeking damages pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000d, and 20 U.S.C. § 1703 *et seq.*

## II. DISCUSSION

### A. Standard

The defendant has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), claiming that the plaintiffs have not stated a claim upon which relief may be granted. The Court therefore applies the same standard used for a motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). *See Hoffman v. Nassau County Police Dept.,* No. 06–CV–1947 (SJF)(AKT), 2008 WL 1926773, *4 (E.D.N.Y. Apr. 30, 2008) (applying the 12(b)(6) standard on a motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c)).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 22 A.D. 379, 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

The Court applies this analysis to the defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

### B. As to Plaintiffs' Claims Under 42 U.S.C. § 1981 and 42 U.S.C. § 2000d

The plaintiffs allege violations of both 42 U.S.C. § 1981 and 42 U.S.C. § 2000d. 42 U.S.C. § 2000d is commonly referred to as Title VI.

Title VI provides, in part, that:

[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Section 1981 provides, in part, that:

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to ... the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a).

The Second Circuit has held that to establish a claim under either Title VI or Section 1981, plaintiff must show, among other things, (1) "that the defendant discriminated against him on the basis of race," (2) "that that discrimination was

intentional," and (3) "that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens College,* 242 F.3d 58, 69 (2d Cir. 2001) (internal quotations omitted).

The Second Circuit has provided somewhat conflicting guidance as to how specifically a plaintiff must allege the intent to discriminate in this context. In several published opinions, the Second Circuit has stated that a plaintiff must plead specific facts that give rise to an inference of intentional discrimination. *See Rivera–Powell v. New York City Bd. of Elections,* 470 F.3d 458, 470 (2d Cir.2006) ("[plaintiff's] complaint proffers only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss." (internal citations and quotations omitted)); *Gregory v. Daly,* 243 F.3d 687, 692 (2d Cir.2001) (plaintiff must "assert facts from which, construing the complaint liberally and in the plaintiff's favor, one could infer such a violation"); *Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir. 1994) ("a 'naked allegation' of racial discrimination" is insufficient to withstand a motion to dismiss). However, the Second Circuit suggested in a more recent opinion not selected for publication in the Federal Reporter, that a plaintiff may plead discrimination by conclusion. *Wang v. Office of Professional Medical Conduct,* 228 Fed. Appx. 17, 20 (2d Cir.2007). ("Although [plaintiff] alleges no facts that would support a finding of discriminatory intent, he need not do so at the pleading stage.").

■ Considering the Second Circuit's 2009 decision in *Iqbal* and the fact that *Wang* is an unpublished decision, the Court finds that this Circuit continues to require that racial animus be plead with particularity. *See Manbeck v. Micka,* 640 F.Supp.2d 351 (S.D.N.Y.2009) (suggesting that *Wang* is contradicted by *Iqbal's* admonition that Fed.R.Civ.P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

■ Here, the plaintiffs have alleged that the "[d]efendant's imposition of a disciplinary penalty against Edwin Aleman was on the basis of his race and national origin, Hispanic," (Compl. ¶ 39), and that the "[d]efendant's actions were intentional and motivated by the Plaintiff's race and national origin." (Compl. ¶ 51.) The plaintiffs additionally argue that Bay Shore School District demonstrated racial animus by communicating with the plaintiffs in English rather than Spanish, and that the mere fact and length of Aleman's suspension for alleged involvement with a primarily-Hispanic street gang demonstrates racial animus.

■ The Court is not convinced by these arguments and conclusory allegations. Typically, facts that support an inference of racial animus relate to longterm practices of discrimination, or to comments made by individuals suggesting that they harbor racial biases. *See Yusuf,* 35 F.3d at 716 (complaint for intentional discrimination stated a claim because it alleged that "males accused of sexual harassment [by defendant] are 'historically and systematically' and 'invariably found guilty, regardless of the evidence, or lack thereof.' "); *Hicks v. IBM,* 44 F.Supp.2d 593, 598 (S.D.N.Y.1999) (stating that an inference of discriminatory intent was raised when the plaintiff alleged defendant made derogatory comments concerning African Americans in the plaintiff's presence).

To be sure, the plaintiffs' allegations need not fit into one of these categories to establish an inference of discriminatory intent. However, in the Court's view, the mere fact that the defendant communicat-

ed with the plaintiffs in English, without any additional facts suggesting this was done to purposely discriminate against Aleman, does not raise an inference of discriminatory intent. Likewise, the fact and length of Aleman's suspension, with no allegations concerning the defendant's treatment of other similarly situated students, also does not create an inference of discriminatory intent.

The Court thus finds that the plaintiffs have not stated a claim pursuant to Section 1981 and Title VI. The defendant's motion for judgment on the pleadings with respect to the plaintiffs' claims under Section 1981 and Title VI is therefore granted.

### C. As to the Plaintiffs' Equal Education Opportunity Act Claims

The plaintiffs allege that Bay Shore School District violated the Equal Education Opportunity Act, 20 U.S.C. § 1703 *et. seq.* ("EEOA") by failing provide the plaintiffs with communications in Spanish concerning the charges against Aleman, and by interviewing Aleman in English with respect to these charges. Section 1703 of the EEOA provides in pertinent part:

No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by . . .

(f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

■ Here, the plaintiffs argue that the defendant's failure to communicate with them in English led to Aleman's suspension, which resulted in Aleman's improper "exclusion from instructional programs," in violation of the EEOA. However, the plaintiffs cite no law suggesting that these actions, even when taken as true, form the basis of a claim under the EEOA. Indeed, the plaintiffs cite only the bare statute in support of their claim.

Courts have almost universally interpreted Section 1703(f) to apply to school districts' and states' efforts to overcome language barriers in the classroom. *See, e.g., Horne v. Flores,* —— U.S. ——, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009); *U.S. v. City of Yonkers,* 197 F.3d 41 (2d Cir.1999); *Deerfield Hutterian Ass'n v. Ipswich Bd. of Ed.,* 468 F.Supp. 1219 (D.C.S.D.1979); *Martin Luther King Jr. Elementary School Children in Green Road Housing Project v. Michigan Board of Education,* 451 F.Supp. 1324 (D.C.Mich.1978). The statute thus has been used to ensure that schools provide sufficient language resources to enable students to understand the instructional material presented to them.

■ Here, the plaintiffs' claim is significantly removed from this purpose. The plaintiffs do not allege that Bay Shore School District provided Aleman with insufficient language resources in the classroom, but rather, that misunderstandings created by language difficulties led to Aleman's wrongful suspension. While the Second Circuit has not explicitly precluded the type of claim the plaintiffs seek to bring, the Court finds that the plaintiffs' claim is too attenuated from the purpose of the statute to survive a motion to dismiss. The EEOA was intended to "specify appropriate remedies for the orderly removal of the vestiges of the dual school system," *U.S. v. City of Yonkers,* 96 F.3d 600, 620 (2d Cir.1996) (internal quotations omitted). There is no indication that it was intended to provide relief for students alleging wrongful punishment as the result of language barrier difficulties.

Moreover, even if the EEOA did provide relief for students alleging wrongful

punishment as a result of language barrier difficulties, the plaintiffs have not alleged facts that plausibly support this theory. The plaintiffs allege that there was "confusion" created by Sullivan's interview of Aleman in English, but fail to allege the substance of Sullivan's testimony concerning this interview, or how this testimony led to Aleman's suspension. Similarly, the plaintiffs allege that they were sent notices concerning the charges against Aleman in English rather than in their native language, but they do not allege facts that plausibly suggest that this actually impaired their participation in Aleman's suspension hearing. Rather, the plaintiffs allege that five days before Aleman's hearing, they faxed a letter to the Bay Shore School District that demonstrated an understanding of the English-language charges against Aleman. Moreover, the plaintiffs admit that they received copies of the charges against Aleman in Spanish prior to Aleman's hearing.

For these reasons, the Court finds that the plaintiffs have not stated a claim for relief under the EEOA. The Court therefore grants the defendant's motion for judgment on the pleadings with regard to the plaintiffs' claims under the EEOA.

### D. As to the Plaintiffs' Section 1985 claims

■ The plaintiffs allege violations of 42 U.S.C. § 1985, which makes it illegal to conspire to deprive a person of privileges or immunities under the law. To state a Section 1985 claim, a plaintiff must allege:

(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a

deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999); *see also Oparaji v. New York City Dept. of Educ.,* No. 03 CV 4105, 2005 WL 1398072, *10 (E.D.N.Y.2005).

■ The plaintiffs' Section 1985 claims fail first because the plaintiffs do not allege that the Bay Shore School District was involved in any conspiracy. Indeed, the plaintiffs mention Section 1985 only in passing in the first paragraph of their complaint, and then never allege—even in conclusory form—a conspiracy by Bay Shore School District or among its employees.

■ Further, a claim pursuant to Section 1985 must include an allegation of racial animus. The plaintiff must allege facts showing that "the conspiracy ... [is] motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bliss v. Rochester City School Dist.,* 196 F.Supp.2d 314, 337 (W.D.N.Y. 2002) (quoting *United Broth. of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 834–35, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), internal quotations omitted). These facts must be alleged with some particularity. *Id.* However, as previously discussed, *supra.,* at II(B), the plaintiffs have alleged no facts that support an inference of racial animus. For these reasons, the Court grants the defendant's motion for judgment on the pleadings with regard to plaintiffs' claims under Section 1985.

### E. As to the Plaintiffs' Section 1983 Claims

■ The plaintiffs additionally seek relief pursuant to 42 U.S.C. § 1983. It is well settled that Section 1983 does not create substantive rights, but rather provides a vehicle by which parties can seek

redress for violations of their federally guaranteed rights. *See, e.g., Morris–Hayes v. Board of Educ. of Chester Union Free School Dist.,* 423 F.3d 153, 159 (2d Cir. 2005). The plaintiffs have not clearly stated the substantive rights that form the basis for their Section 1983 claims, but considering the complaint in the best light for the plaintiffs, the Court identifies three bases for the plaintiffs' Section 1983 claims: (1) a First Amendment free speech claim, (2) a Fourteenth Amendment equal protection claim, and (3) a Fourteenth Amendment procedural due process claim.

### 1. Monell Liability for Municipalities

 The Bay Shore School District faces liability under Section 1983 pursuant to the well-established doctrine of municipal liability set forth in the United States Supreme Court decision *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* protects municipal persons such as the defendant from conventional *respondeat superior* liability for the acts of its employees, holding a municipality liable under Section 1983 only if "its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained of] injury.'" *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 128 (2d Cir.2004) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).

 The Second Circuit has held that a single act by a municipality may amount to municipal policy "if ordered by a person 'whose edicts or acts may fairly be said to represent official policy.'" *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018); *see also Back,* 365 F.3d at 128. Specifically, "[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." *Id.* The Second Circuit further stated that "[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Id.*

Here, the plaintiffs make no allegations that Bay Shore School District had a *custom* of violating any rights or privileges. None of the facts alleged relate to any events other than those affecting Aleman, and the plaintiffs do not even allege a conclusion that Bay Shore School District commonly or customarily violated students' rights.

 However, the plaintiffs have alleged that certain decisions that affected Aleman were made by individuals whose decisions could constitute Bay Shore School District's final decisions, thus effectively forming municipal policy. Namely, the plaintiffs allege that a designee of the Superintendent for the Bay Shore School District, who could plausibly be shown to have policy-making power, made the decision to suspend Aleman for nearly a year. The plaintiffs also allege that the Bay Shore School District school board, whose decisions are also plausibly imbued with policy-making power, upheld Aleman's suspension. The Court finds these actions to be plausible bases for *Monell* liability against the Bay Shore School District. Also, the actual policies of the Bay Shore School District, including the defendant's code of conduct for students, necessarily form the basis for potential *Monell* liability.

 However, the plaintiffs' allegations concerning Sullivan's alleged individual misconduct cannot form the basis for Bay Shore School District's liability under *Monell.* In particular, the plaintiffs allege

that Sullivan improperly interviewed Aleman in English and improperly suspended Aleman for five days. Sullivan is Dean of Students for the tenth and twelfth grade at Bay Shore High School, and as such, it is not plausible that he is a *de facto* policymaker for the Bay Shore School District. The Bay Shore School District therefore does not face Section 1983 liability for Sullivan's actions.

With these limitations in mind, the Court now considers the substantive violations alleged pursuant to Section 1983.

### 2. First Amendment Claim

The plaintiffs allege that Bay Shore School District infringed Aleman's right to free speech pursuant to the First Amendment of the United States Constitution by suspending him for allegedly making the statement, "Did you say MS was pussy?"

■ A Section 1983 free speech claim requires first that a plaintiff allege that he engaged in Constitutionally-protected speech. *See, e.g., Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) (stating that Section 1983 free speech claim required a showing that the defendant's actions were caused by the plaintiff's exercise of free speech rights); *DeLoreto v. Ment,* 944 F.Supp. 1023, 1035 (D.Conn. 1996) (also discussing the elements of a Section 1983 free speech claim); *Black v. Brewer,* 302 Fed.Appx. 669 (9th Cir.2008) (stating that the first element of a school-based Section 1983 free speech claim is that the student "engaged in Constitutionally-protected speech"). This, of course, requires that a plaintiff allege he engaged in *some speech.*

■ Here, the plaintiffs deny that Aleman made the statement for which he was suspended. The complaint states:

26. With respect to Defendant's Charge # 1, the evidence at the Defen-

dant's internal Hearing revealed that on February 13, 2008, while Edwin Aleman was standing in the Defendant's Bay Shore High School hallway outside of his classroom waiting for class to begin, another student, Francisco Baires, was standing next to him. Francisco Baires said to another student, Angel Perez, "Did you say MS was pussy?" That was the entire extent of the incident underlying the Defendant's first charge against Edwin Aleman.

(Compl. ¶ 26.) While this allegation is not entirely clear, even taking the pleading in the best light for the plaintiffs, the Court finds that the plaintiffs are alleging that Aleman did not make the statement, "Did you say MS was pussy?" The plaintiffs therefore have not alleged the first element of a Section 1983 free speech claim— namely, that Aleman engaged in Constitutionally-protected speech.

Thus, the plaintiffs have not stated a claim for violations of Aleman's free speech rights, and the Court grants the defendant's motion for judgment on the pleadings with respect to the plaintiffs' Section 1983 free speech claim.

### 3. Equal Protection Claim

■ The plaintiffs further allege that Bay Shore School District violated Aleman's equal protection rights under the Fourteenth Amendment of the United States Constitution. The Equal Protection Clause "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). The Second Circuit has held that a plaintiff seeking to prove a violation of the Equal Protection Clause must show:

(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible consider-

ations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000) (quoting *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980)).

▇ Thus, unlike the plaintiffs' claims under Title VI and Section 1981, the plaintiffs need not allege racial animus to state a claim under the Equal Protection Clause. Rather, the plaintiffs must only allege that Aleman was treated differently than those similarly situated, based on considerations of race.

▇ Here, the plaintiffs allege few if any facts directly related to the treatment of persons similarly situated to Aleman. Nonetheless, the plaintiffs have alleged that MS–13 is a primarily Hispanic street gang, that Aleman is Hispanic, and that he was suspended for nearly a year for allegedly making a single, potentially innocuous statement concerning "MS". The Court finds that these facts give rise to a plausible inference that the defendant improperly considered Aleman's race in determining that Aleman's alleged statement concerning "MS" was serious enough to warrant a nearly year-long suspension.

The plaintiffs have thus stated a claim under the Equal Protection Clause, and the defendant's motion for judgment on the pleadings with respect to the plaintiffs' Equal Protection Clause claims is therefore denied.

### 4. Procedural Due Process Claims

▇ The plaintiffs also allege a violation of Aleman's rights under the Due Process clause of the Fourteenth Amendment. The Due Process clause protects individuals from being deprived of property or liberty without due process of law. *See, e.g., Kelly Kare, Ltd. v. O'Rourke,* 930

F.2d 170, 175 (2d Cir.1991). While the United States Constitution does not provide a property right to education, the Second Circuit has found that New York State law creates a right to a free public education for individuals under the age of twenty-one. *Handberry v. Thompson,* 436 F.3d 52, 71 (2d Cir.2006). The Second Circuit has further held that this right is protected by the Due Process Clause of the Fourteenth Amendment. *Id.*

▇ As a general matter, due process of law at a school disciplinary hearing need not include all of the procedural protections provided in a criminal proceeding. *Farrell v. Joel,* 437 F.2d 160, 162 (2d Cir. 1971). Rather, the trier of fact in a school disciplinary setting need provide only minimal due process protections for "mild" penalties, but must provide more significant protections for "severe" penalties. *Id.; see also Rubino v. Saddlemire,* No. 3:05cv1955 (PCD), 2007 WL 685183, *9 (D.Conn., Mar. 1, 2007) (holding that, under the *Rubino* rubric, a two year suspension for a college student was a "severe" penalty). Also, students facing a suspension of ten days or less are entitled only to an informal "give and take" with the administrator imposing the penalty, at which the student is permitted to give her side of the story. *Goss v. Lopez,* 419 U.S. 565, 582, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Students facing more serious consequences are afforded additional procedural protections, the scope of which is fluid.

▇ In addition, New York State statutory law provides certain procedural safeguards to students facing suspensions of more than five days, including the right to reasonable notice, the right to call and examine witnesses, and the right to legal representation. N.Y. Educ. L. § 3214(3)(c)(1). The plaintiffs are not suing under this New York statute, however, and this statute does not delineate the

scope of the due process rights guaranteed by the Fourteenth Amendment. *See, DeFabio v. East Hampton Union Free School Dist.,* 658 F.Supp.2d 461, 492–93 (E.D.N.Y.2009).

The plaintiffs argue that the defendant violated Aleman's procedural due process rights, in that: (1) there was insufficient notice given to the plaintiffs regarding the charges against Aleman, (2) the provision of the code of conduct that Aleman was found guilty of violating is void for vagueness, and (3) Aleman was not afforded the right to confront accusing witnesses whose testimony was entered into the record as hearsay. The Court considers these assertions in turn.

### a. Insufficient Notice Claim

A student facing a serious disciplinary consequence such as long-term suspension is generally entitled to written notice of the charges against him. *See Goss v. Lopez,* 419 U.S. 565, 582, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *see also DeFabio,* 658 F.Supp.2d at 492–93 (citing cases). Here, the plaintiffs allege that Bay Shore School District provided them with written notice of the charges against Aleman, but complain that the charges were only belatedly provided in Spanish, the plaintiffs' native language.

The plaintiffs provide no law in support of their claim that the notice of charges against Aleman was deficient in this way. The plaintiffs admit that they received written notice of the charges in English, and then additional written notice of the charges in Spanish, all before Aleman's hearing began. Further, the plaintiffs admit to sending a letter to the Bay Shore School District requesting a more specific statement of charges four days before the hearing began. This strongly suggests that the plaintiffs understood the charges against Aleman, even in English, at that time. In addition, the plaintiffs

allege no facts showing prejudice caused by the alleged delayed notice of the charges against them. These allegations therefore do not form the basis for a due process claim.

### b. Void for Vagueness Claim

The plaintiffs also claim that the code of conduct cited in the statement of charges against Aleman was unconstitutionally vague.

The United States Supreme Court has stated that, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Nevertheless, the Fourteenth Amendment requires that even public school codes of conduct should not be so vague as to force a person of "common intelligence" to guess what conduct the rule proscribes. *Baggett v. Bullitt,* 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964); *Trinity United Methodist Parish v. Board of Educ. of City School Dist. of City of Newburgh,* 907 F.Supp. 707, 718 (S.D.N.Y.1995). The prohibition against vague laws and administrative rules is additionally justified as a means of protecting individuals from arbitrary enforcement of ill-defined laws. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605 (1974); *see also Stephenson v. Davenport Community School Dist.,* 110 F.3d 1303, 1308 (8th Cir.1997).

The plaintiffs challenge a provision of Bay Shore School District's code of conduct that states:

*Prohibited Group Affiliations:* Any activity, affiliation and/or communication in connection with a non-school sanctioned club/group, including fraternal organizations or gangs, is prohibited.

(Compl. ¶ 30.) The plaintiffs allege that Bay Shore School District does not maintain or publish a list of "non-school sanctioned clubs/groups."

The plaintiffs assert that this statute is void for vagueness, and the parties focus on the word "gang" in the rule. Bay Shore School District alleges that "gang," as used in the rule, is not unconstitutionally vague, but rather has a "plain, common meaning, easily comprehendible to people of ordinary intelligence." (Def. Mem. L at 20.) The plaintiffs dispute this assertion.

While the Second Circuit has not addressed this issue directly, the Eighth Circuit, in *Stephenson v. Davenport Community School Dist.*, 110 F.3d at 1308, analyzed a school rule prohibiting "[g]ang related activities such as display of 'colors', symbols, signals, signs, etc." The court reasoned that the word "gang" or "gangster" as used in statutes and rules had been determined to be unconstitutionally vague as early as 1939. *Id.* at 1309 (citing *Lanzetta v. State of New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)). The court found that since that time, the various usages of the word had only proliferated, so that the definition of the word "gang" is now "notoriously imprecise." *Id.* The court further reasoned that the broad meaning accorded to "gang" gave school administrators too much discretion in enforcing the rule, in violation of students' due process rights. *Id.* at 1310. Based on this, the court struck down the rule as unconstitutionally vague. *Id.*

Similarly, the court in *Chalifoux v. New Caney Independent School Dist.*, 976 F.Supp. 659 (S.D.Tex.1997) found unconstitutional a rule that prohibited the wearing of "[a]ny attire which identifies students as a group (gang-related)." The *Chalifoux* court stated that the term "gang-related" was impermissibly vague, and similarly reasoned that this afforded school administrators too much discretion in enforcement. *Id.* at 668.

The Court finds these courts' reasoning to be persuasive and on point. Here, the challenged rule is even broader than the rules in *Stephenson* and *Chalifoux*, as it forbids all "affiliation, activity, and/or communication in connection with ... a gang." Further, the plaintiffs allege that Bay Shore School District provided no guidance as to the applicability of this rule, creating the plausible inference that administrators exercised wide-ranging discretion in its implementation.

In addition, the Court finds significant ambiguity in the terms "activity", "affiliation," and "communication" as used in the provision. These terms all have broad general meaning, so that the rule could be applied to virtually any action or communication related to a "non-school sanctioned" group, regardless of how benign the act or word. These terms are thus potentially unconstitutionally vague in this context.

For these reasons, the Court finds that the plaintiffs have stated a claim that the provision in question is void for vagueness.

### c. Right of Cross–Examination Claim

█ The plaintiffs additionally allege that Aleman was denied at his suspension hearing the right to cross examine the complaining witnesses. While the plaintiffs do not allege the details of the testimony provided at the hearing, they do contend that the eye-witness testimony of Aleman's alleged infractions was provided only second hand, by Sullivan, the Dean of Students.

As a general matter, there is no hard and fast federal Constitutional right to call or cross-examine witnesses in a school disciplinary setting. This is true even when the student faces a potentially serious disciplinary consequence. *See, e.g., Nash v. Auburn University,* 812 F.2d 655, 663–64 (11th Cir.1987) (holding that hearing resulting in one year suspension for graduate-level students was constitutional even when students were not permitted to directly cross-examine witnesses at trial).

Nevertheless, the touchstone of due process is that the accused be afforded an appropriate and meaningful hearing. The Court determines the procedural protections necessary to effect this requisite in the administrative setting by consideration of the factors the Supreme Court set forth in *Mathews v. Eldridge,* 424 U.S. 319, 333–34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). These factors include "(1) the private interest that will be affected; (2) the risk of erroneous deprivation through the procedures and the probable value of additional or alternative safeguards; and (3) the government's interest, including the function involved and the administrative burdens of the additional safeguards." *E.K. v. Stamford Bd. of Educ.,* 557 F.Supp.2d 272, 276 (D.Conn. 2008) (citing *Mathews,* 424 U.S. at 319, 96 S.Ct. 893).

The interest at stake at Aleman's suspension hearing was significant. As to the risk of harm caused by Aleman's alleged inability to call and cross-examine relevant witnesses, and the burden that this additional safeguard would place on the defendant, these are factual questions. However, the Court finds it plausible that the importance of Aleman's right to a free public education could outweigh the burden that would have been placed on the defendant by affording Aleman the right to call and cross-examine the complaining witnesses. The Court thus finds that the plaintiffs have stated a claim that the defendant violated the due process rights of Aleman by denying him the right to confront his accusers and call and examine witnesses.

For these reasons, the Court denies the defendant's motion for judgment on the pleadings with respect to the plaintiffs' procedural due process claims.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 1981 is GRANTED,

**ORDERED** that the defendant's motion for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 2000d is GRANTED,

**ORDERED** that the defendant's motion for judgment on the pleadings with respect to plaintiffs' claims pursuant to the Equal Education Opportunity Act, 20 U.S.C. § 1703 et. seq., is GRANTED,

**ORDERED** that the defendant's for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 1985 is GRANTED,

**ORDERED** that the defendant's motion for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution is GRANTED,

**ORDERED** that the defendant's motion for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution is DENIED, and

**ORDERED** that the defendant's for judgment on the pleadings with respect to the plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution is DENIED.

**SO ORDERED.**