Patrick McDOWELL, Plaintiff,

v.

NORTH SHORE–LONG ISLAND JEWISH HEALTH SYSTEM, INC. a/k/a North Shore–Long Island Jewish Health System, Defendant.

No. 10–cv–3534 (ADS)(ARL).

United States District Court, E.D. New York.

June 2, 2011.

 

David Abrams, Esq., New York, NY, for Plaintiff.

David S. Kim, Esq., Peter D. Stergios, Esq., of Counsel, McCarter & English, LLP, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff in this case alleges that his former employer discriminated against him on the basis of his race, and also retaliated against him for complaining about a coworker's offensive statements. The defendant now moves to dismiss the plaintiff's complaint in its entirety. For the reasons set forth below, the Court grants the defendant's motion, with leave to replead.

## I. BACKGROUND

The plaintiff Patrick McDowell is a black male who worked as a biomedical technician for the defendant, North Shore–Long Island Jewish Health System, Inc. ("North Shore/LIJ"), from September 2007 until December 2008. McDowell does not describe his duties as a biomedical technician, although he alleges that his work performance was satisfactory during this entire period. McDowell asserts that he was wrongfully terminated (1) based on his race and (2) in retaliation for complaining about racist conduct by a co-worker.

According to McDowell, some time in or before August 2008, a co-worker of McDowell's at North Shore/LIJ identified as "DG" threatened McDowell and "used the word 'nigger' in conversation with [McDowell]". (Am. Compl., ¶ 9.) McDowell alleges no other details of this encounter, but alleges that he reported the incident to a woman named Deborah Sullivan in August 2008. McDowell does not identify Sulli-

van's position at North Shore/LIJ nor does he describe the nature of his complaint, but he does assert that his reporting of the incident constituted a complaint "to [North Shore/LIJ]". (Id.) McDowell also does not describe what, if any, action was taken based on his report.

Approximately four months later, during the first week of December 2008, North Shore/LIJ allegedly "stopped giving assignments to Plaintiff, advising him that there was not sufficient work for him to do and that his school schedule interfered with his work." (Id., ¶ 10a.) The plaintiff implies that this resulted in his "discharge." (Id.) According to the plaintiff, the defendant discharged him both (1) because he was black, and (2) in retaliation for complaining of racial harassment to Deborah Sullivan. The plaintiff alleges that these claims are corroborated by the fact that,

> [u]pon information and belief, [North Shore/LIJ] continued to give work to similarly situated biomedical technicians who were non-Black and/or who, upon information and belief, had not complained about racial harassment even though Plaintiff's job performance was at least as good as that of the other biomedical technicians.

(Id., ¶ 10b.)

On August 2, 2010, the plaintiff commenced the present case, asserting causes of action for discrimination and retaliation in violation of 42 U.S.C. § 1981 and the New York State Human Rights Law. After the plaintiff amended his complaint, the defendant made the present motion on October 20, 2010 to dismiss the plaintiff's amended complaint pursuant to Fed. R.Civ.P. 12(b)(6). The plaintiff opposes the defendant's motion.

## II. DISCUSSION

### A. Legal Standard on a Motion to Dismiss for Failure to State a Claim

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

### B. As to the Plaintiff's Section 1981 Cause of Action

The plaintiff asserts in his complaint that, "the reasonable inference from the timing, circumstances, and justification offered by [North Shore/LIJ] is that Plaintiff was discharged because of his race or in retaliation for his complaint or both." (Am. Compl., ¶ 10c.) The plaintiff states

that this "violated the Civil Rights Act of 1866" (Id., ¶ 13.)

The portion of the Civil Rights Act of 1866 relevant to the plaintiff's claim is codified at 42 U.S.C. § 1981, which provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." The Supreme Court has interpreted this statute to provide a basis to assert claims against private employers for wrongful termination on the basis of race, as well as for wrongful termination in retaliation for protected conduct. *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 455–57, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008). In analyzing such a claim, a court applies the same standard used to evaluate a claim for discrimination and retaliation that is used to evaluate a Title VII claim. *See, e.g., Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). However, at the pleading stage, the Court does not apply the familiar *McDonnell Douglas* burden shifting test used to analyze the evidentiary support for discrimination claims, but rather generally assesses the plausibility of the plaintiff's claim based on the facts alleged. *See Boykin v. KeyCorp,* 521 F.3d 202, 212–13 (2d Cir. 2008).

In assessing the plausibility of the racial discrimination portion of the plaintiff's Section 1981 claim, the Court must determine whether plaintiff has alleged facts showing that the defendant took an adverse employment action against him based on the plaintiff's race. *See, e.g., Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993). In addition, the Court also analyzes whether the plaintiff has alleged racial animus with sufficient particularity. *See Rivera–Powell v. New York City Bd. of Elec-*

*tions,* 470 F.3d 458, 470 (2d Cir.2006) ("[plaintiff's] complaint proffers only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss." (internal citations and quotations omitted)); *Lopez v. Bay Shore Union Free School Dist.,* 668 F.Supp.2d 406, 414 (E.D.N.Y.2009) (Spatt, J.) (finding that "this Circuit continues to require that racial animus be plead with particularity").

As to whether the plaintiff has plead retaliation, the Court weighs whether the plaintiff has shown that "(1) [the plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark,* 508 F.3d 106, 115 (2d Cir.2007).

Here, while the Court ultimately finds that the plaintiff has not stated a valid Section 1981 claim, the Court notes that the defendant's first challenge to the plaintiff's Section 1981 claim is without merit. According to the defendant, the plaintiff has no valid Section 1981 cause of action because he has not alleged facts showing that he was actually terminated from his job. While it is true that the plaintiff's allegations concerning the end of his employment with the defendant are vague, the Court finds that, taking those facts in the best light for the plaintiff, he has sufficiently alleged that his employment was terminated by the defendant. This basis for dismissing the plaintiff's Section 1981 claim is therefore without merit.

Nevertheless, the Court finds that the plaintiff's Section 1981 discrimination cause of action fails because the plaintiff has not alleged any facts showing discriminatory animus. The only alleged

facts that the plaintiff points to in this regard are (1) the alleged racist remarks made by the plaintiff's co-worker, and (2) the alleged conclusion that the defendant treated similarly situated non-black individuals better than it treated the plaintiff. However, even assuming that the plaintiff has sufficiently identified offending conduct—which is uncertain—the plaintiff alleges no facts showing that his co-worker's alleged racist remarks were anything other than an isolated incident, or that they reflected in any way the views of the plaintiff's managers. *See, e.g., Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir.1998) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.... [S]uch comments, without more, cannot get a discrimination suit to a jury." (internal citation omitted)). In addition, the plaintiff's conclusion that other similarly-situated employees were treated more favorably than him is a bare conclusion, unsupported by any specific alleged facts. *See, e.g., Grimes v. Fremont General Corp.*, No. 08–cv–1024, 785 F.Supp.2d 269, 296–97, 2011 WL 1899403, *17 (S.D.N.Y. Mar. 31, 2011) (collecting cases finding that conclusory allegations of discrimination do not state a claim for discrimination under Section 1981). The discrimination portion of the plaintiff's Section 1981 claim is insufficient as a matter of law and therefore must be dismissed.

■ As for the retaliation portion of the plaintiff's Section 1981 claim, the plaintiff has sufficiently alleged facts to satisfy the first two of the three requirements for this cause of action—namely, that the plaintiff took a protected act in complaining about racial harassment, and that the plaintiff later suffered an adverse employment action in being terminated. However, the plaintiff has not satisfied the third require-

ment by alleging sufficient facts to show a causal connection between the two.

The only potential basis for showing a causal connection here is the temporal proximity between the protected activity and the adverse employment action. No other alleged facts suggest that the plaintiff's termination was in retaliation for his complaint. However, the Court finds that the temporal proximity of the events in this case does not alone support an inference of retaliation.

The Second Circuit has not established a bright line rule as to how closely an adverse employment action must follow protected activity to imply that the former was in retaliation for the latter. *See, e.g., Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.2009) (citing *Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir.2001)). While some courts within this Circuit have held that a three month gap is insufficient to show a causal connection, others have found that a separation of as much as eight months will permit an inference of causation. *Id.* (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) and *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980)).

The Second Circuit has avoided definitively resolving this issue to permit courts "to exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Id.* Thus, in *Espinal*, the protected activity was a lawsuit against prison guards, and the adverse action which followed five months after the lawsuit was a beating by prison guards. In spite of the lengthy gap between the events, the court found that the plaintiff had sufficiently alleged a causal connection between the lawsuit and the beating because it was plausible that the officers had waited until the plaintiff was involved in a

fight with another inmate to "exact their retaliation". *Id.* By contrast, the Second Circuit held in *Hollander v. American Cyanamid Co.* that a three month period between the plaintiff's EEOC complaint and an adverse employment action was insufficient to show a retaliatory motive, because no other facts in the record supported a finding of retaliation. 895 F.2d at 85–86 (dismissing the plaintiff's complaint under the more lenient pre-*Twombly* pleading standard).

Here, the alleged retaliatory act occurred more than three months after the alleged protected activity, and nothing in the complaint aside from the temporal proximity between these two events shows a retaliatory motive. Thus, pursuant to the Second Circuit's authority, the Court finds that the greater than three month gap, unsupported by any other allegations showing plausible retaliation, is insufficient to raise an inference of retaliation. Accordingly, the Court thus finds that the cause of action in the plaintiff's Section 1981 claim is also insufficient and must be dismissed.

Having found that the plaintiff has not stated either a discrimination claim or a retaliation claim under Section 1981, the Court grants the defendant's motion to dismiss the plaintiff's Section 1981 claim, without prejudice and with leave to re-plead.

### C. As to the Plaintiff's New York State Human Rights Cause of Action

The plaintiff also asserts a discrimination and retaliation claim against the defendant based on New York State Human Rights Law, N.Y. Exec. Law § 296. Just as Section 1981 discrimination and retaliation claims are analyzed under the Title VII framework, New York State Human Rights Law causes of action for discrimination and retaliation are also analyzed under this rubric. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000). Thus, the plaintiff's New York State Human Rights Law claim is subject to the same analysis as his Section 1981 claims, and the plaintiff's New York State Human Rights Law claim therefore fails for the same reasons. *See, e.g., Ifill v. United Parcel Service,* No. 04–cv–5963, 2005 WL 736151, *5 n. 3 (S.D.N.Y. Mar. 29, 2005) (analyzing Section 1981 and New York State Human Rights Law discrimination claims in tandem). However, the Court similarly grants the plaintiff leave to amend his complaint as to this cause of action.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion to dismiss the complaint is granted in its entirety, without prejudice to the plaintiff's right to serve an amended complaint within twenty days from the date of this Order.

**SO ORDERED.**